IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| JAMES LEE TILLEY | § | |
| VS. | § | CIVIL ACTION NO. 6:06cv57 |
| GARY PINKERTON, ET AL. | § | |

MEMORANDUM OPINION AND
ORDER OF DISMISSAL

Plaintiff James Lee Tilley, a prisoner confined at the Smith County Jail, proceeding *pro se* and *in forma pauperis*, filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983. The Defendants are Captain Gary Pinkerton, Lt. Dick Jackson and Lt. Marlon Sewell. The complaint was referred to the undersigned by consent of the parties pursuant to 28 U.S.C. § 636(c).

Facts of the Case

The original complaint was filed on February 1, 2006. The Plaintiff complained that he was being denied appropriate medical care for an inguinal hernia. On May 26, 2006, the Court conducted an evidentiary hearing, in accordance with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. The hearing was conducted "to dig beneath the conclusional allegations; to reduce the level of abstraction upon which the claims rest; to ascertain exactly what scenario the prisoner claims occurred, as well as the legal basis for the claim." *Id.* at 180. The hearing is "in the nature of a motion for more definite statement." *Id.* at 180-181. The Plaintiff testified as to the factual basis of his claims. The Defendants also testified to clarify the facts.

The Plaintiff testified that he arrived at the Smith County Jail on new charges on December 5, 2005. He was booked into the jail on the following day. When questioned by the Defendants, he

agreed that he was on parole from Arkansas at the time and was a convicted felon. On December 17, 2005, he felt a burning sensation in his groin while climbing up to his bunk at the Smith County Low Risk Facility. He noticed a bulge in the area. He started submitting requests for medical care and grievances. He was moved to the main jail. Lt. Sewell talked to him and contacted medical personnel in his behalf. He was taken to the University of Texas Health Center at Tyler (UTHCT) during the week of January 4, 2006. A doctor examined him and scheduled him for surgery within the next three days. He was provided a pre-operation kit. He was also provided medication, which made him sleep all of the time. By January 17, 2006, he had not had the operation. He filed more grievances. He was called to Lt. Sewell's office. Lt. Sewell called medical personnel to see why there was a delay. On January 25, 2006, the Plaintiff talked to Lt. Jackson. A letter was read to him saying that the surgery was elective and that there would be no surgery due to Smith County policy. The Plaintiff testified that the problem still has not been fixed.

The Plaintiff testified that he sued Captain Pinkerton because he could not get a response about the surgery. He never talked to him personally. He sued Lt. Jackson because he signed grievances and because Lt. Jackson told him that he would not receive the surgery due to Smith County policy. He sued Lt. Sewell because he was involved in denying him surgery after Lt. Jackson told him there would be no surgery. He acknowledged that Lt. Sewell endeavored to help him prior to that time. The Plaintiff testified that he saw a doctor only on two occasions. He saw a doctor the first time in January, 2006. He had a CT Scan on the hernia and his heart around March 17, 2006. Dr. Brown told him that he could not do anything else for him.

The Defendants asked the Plaintiff a number of questions to fully develop the facts of the case. A copy of the Plaintiff's jail records were admitted into evidence without objection. The

Plaintiff acknowledged that he wrote many grievances. When asked whether the letter on page 339 was the letter from UTCHT that informed jail officials that surgery was elective and not necessary, the Plaintiff testified that he never saw the letter. He was told that the letter came from a Dr. Aberdeen. The Plaintiff testified that he has been seeing nurses about twice each week since March, but he did not see them when his hernia problem occurred. When questioned by the Court, the Plaintiff agreed that he was told that the surgery was elective. He does not dispute the doctor's statement that the surgery was elective, but he believes that the problem should be fixed.

Captain Gary Pinkerton testified that he is the jail administrator. He first became aware of the Plaintiff's problems because the Plaintiff's mother came to see him. He told her that he would look into the problem. He called medical personnel, who told him that the Plaintiff was on the list to see a doctor. He was subsequently told by Kleanthe Caruso, the Vice-President at UTHCT, that the surgery was elective. He testified that Smith County has a contract with UTHCT to provide medical care to jail inmates. They had expenditures of approximately $1.5 million for medical care last year. They follow the instructions that are given by UTHCT. The Plaintiff would have had an operation if UTHCT had concluded that it was needed. He testified that he tried to resolve the problem when he became aware of it. The Plaintiff did not have surgery because hernia repair in this case was deemed elective, as opposed to a medically necessity.

Lt. Dick Jackson testified that he is the evening shift supervisor. He became involved with the Plaintiff due to the grievances. He received a letter from UTHCT saying that the surgery was elective and not necessary. He testified that the medical care that is provided is totally up to medical personnel. He talked to medical personnel and they tried to help the Plaintiff, but the surgery was elective and unnecessary.

Lt. Marlon Sewell testified that he is a lieutenant over the jail. He testified that the letter the jail received from UTHCT about the need for surgery is included in the jail records on page 339 of the exhibits submitted to the Court. The letter stated that a decision had been made that the surgery would have to be considered elective. Lt. Sewell testified that he saw the Plaintiff the first time because the Plaintiff had written many grievances. He thought it would be easier to talk to the Plaintiff, as opposed to responding to him in writing. He talked to the Plaintiff on two occasions. He was under the impression that the Plaintiff had been scheduled for surgery after his examination at UTHCT. He subsequently learned that the surgery was considered elective. He was not present when the letter from UTCHT was read to the Plaintiff.

The Court has reviewed the exhibits entered into evidence, particularly the letter on page 339 from UTHCT concerning the Plaintiff's condition. The letter included the following discussion:

> Base[d] on conversations held with Ms. Caruso and clarification of the agreements between the Smith County correctional agency and UTHCT, I have cancelled the scheduled elective hernia repair surgery on Mr. James Tilley. It is my understanding that the Smith County contract does not provide the benefit of elective surgery for its inmates. Given that, in this case, there are no clinical findings present to suggest incarceration, strangulation, or obstruction; Mr. Tilley's surgery would have to be considered elective. I explained to Mr. Tilley on his initial visit, that the rational for elective hernia repair is to prevent complications which could precipitate an emergent condition, and thus carry increased perioperative risks. If Smith County's perspective on elective surgical services should change, or Mr. Tilley discovers other means to address the financial responsibilities of elective surgery, I would be glad to reevaluate and consider him for operative repair.

The letter is signed by Dr. John A. Aucar, Professor and Chairman of surgery.

Discussion and Analysis

Deliberate indifference to a prisoner's serious medical needs constitutes an Eighth Amendment violation and states a cause of action under 42 U.S.C. § 1983. *Estelle v. Gamble*, 429 U.S. 97, 105-07 (1976); *Jackson v. Cain*, 864 F.2d 1235, 1244 (5th Cir. 1989). In *Farmer v.*

*Brennan*, 511 U.S. 825, 835 (1994), the Supreme Court noted that deliberate indifference involves more than just mere negligence. The Court concluded that "a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. *See also Reeves v. Collins*, 27 F.3d 174, 175 (5th Cir. 1994). The Fifth Circuit has held that the deliberate indifference standard normally associated with Eighth Amendment claims also applies with respect to medical or safety claims by pretrial detainees. *Hare v. City of Corinth*, 74 F.3d 633, 647 (5th Cir. 1996).

The Fifth Circuit has discussed the high standard involved in showing deliberate indifference as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by medical personnel does not suffice to state a claim for deliberate indifference. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* Furthermore the decision whether to provide additional treatment "is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. And, the "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer*, 511 U.S. at 838.

*Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Dissatisfaction with medical treatment or diagnosis does not constitute "deliberate indifference" to a serious medical need and does not rise to the level of the denial of a constitutional right. *Estelle v. Gamble*, 429 U.S. at 106; *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Similarly, a disagreement with the treatment provided by a doctor does not rise to the level of a constitutional violation. *See Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). The Fifth Circuit has held that medical records of

5

sick calls, examinations, diagnoses and medications may rebut an inmate's allegations of deliberate indifference to serious medical needs. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995).

The only decision published by the Fifth Circuit concerning the application of the deliberate indifference standard with respect to an inmate with a hernia is *Reeves v. Collins*, 27 F.3d 174 (5th Cir. 1994). The decision presents an illuminating picture of principles that will help in the resolution of the present case, thus it will be discussed in some detail. The testimony in *Reeves* revealed that prison doctors were responsible for assessing the medical needs of inmates and placing any medical restrictions in an inmate's file for purposes of work assignments. Prison officers were required to follow the instructions from medical personnel. After falling from a bunk, Reeves was examined by a doctor, who told him that he would place restrictions in his file limiting his physical exertion. However, the doctor failed to note the restrictions in the file. Reeves subsequently experienced problems while working. He felt a lump in his lower abdomen and complained to the officers on duty. Reeves' medical restrictions, however, did not include anything that would have placed the officers on notice that he should be excused from working. The officers would not excuse him from working and threatened him with a disciplinary case if he did not work. Despite the threat, Reeves went to the infirmary and had to undergo surgery for a hernia. As in the present case, the inmate sued security personnel, as opposed to medical personnel, for deliberate indifference. He blamed the officers for the onset of the hernia. He admitted, however, that the medical records did not include any restrictions. The Fifth Circuit concluded that the officers were not deliberately indifferent since the medical records did not include any restrictions and held that their actions amounted to nothing more than negligence, which would not support a potentially meritorious civil rights claim. *Id.* at 177. The officers were not liable in light of the information contained in the medical restrictions.

6

This Court recently dealt with another claim by an inmate regarding a hernia in *Clark v. Adams*, No. 9:05cv208, 2006 WL 1305164 (E.D. Tex. May 9, 2006). Clark sued the attending doctor, who concluded that the hernia was easily reduced or put back into place and that surgery was unnecessary. Clark sued the doctor for failing to refer him for surgery to fix the hernia. The Court concluded that the case was frivolous because the inmate had received extensive medical care, including medication, a truss and medical restrictions, and that his disagreement with the doctor as to whether surgery was necessary failed to surmount the "extremely high standard" required to show deliberate indifference. *Id.* at *6.

In the present case, the Plaintiff testified that jail officials told him that UTHCT doctors had concluded that a hernia surgery would be elective. The Plaintiff testified that he did not dispute the doctor's conclusion. The Defendants likewise testified that they were told that surgery was medically unnecessary and was elective. They added that the Plaintiff would have undergone surgery if UTHCT had determined that it was medically necessary. The testimony of all the witnesses reveals that the Defendants did not ignore the Plaintiff's problem. They were sympathetic to his needs. They endeavored to provide the Plaintiff with medical care, but he was denied surgery only after medical personnel at UTHCT concluded that it was unnecessary. The situation would be far different if UTHCT personnel had told the Defendants that surgery was necessary and the Defendants had rejected the conclusion. The facts as alleged and developed do not give rise to an inference that the Defendants were deliberately indifferent to the Plaintiff's serious medical needs. The facts as alleged and developed fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact. The civil rights complaint should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1). It is accordingly

**ORDERED** that the cause of action is **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915A(b)(1). All motions not previously ruled on are **DENIED**.

**So ORDERED and SIGNED this 31st day of May, 2006.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE